1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| FELIPE JESUS VILLASENOR, | ) No. C 12-4829 LHK (PR) |
| Petitioner, | ) ORDER DENYING PETITION FOR |
| | ) WRIT OF HABEAS CORPUS; |
| v. | ) DENYING CERTIFICATE OF |
| | ) APPEALABILITY |
| WARDEN P.E. BRAZELTON, | ) |
| Respondent. | ) |

17    Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254.  He claims that: (1) his constitutional right to a speedy trial was

19  violated, and (2) the admission of his uncharged crimes to prove propensity violated due process.

20  Respondent was ordered to show cause why the petition should not be granted.  Respondent has

21  filed an answer.  Petitioner has filed a traverse.  Having reviewed the briefs and the underlying

22  record, the court concludes that petitioner is not entitled to relief, and DENIES the petition.

23                                    **PROCEDURAL HISTORY**

24    On February 4, 2010, a jury found petitioner guilty of continuous sexual abuse of a child

25  under the age of 14 years.  On April 2, 2010, the trial court sentenced petitioner to a term of

26  sixteen years in state prison.  On February 21, 2012, the California Court of Appeal affirmed the

27  judgment.  On May 9, 2012, the California Supreme Court denied review.  On September 14,

28  2012, petitioner filed the underlying federal habeas petition.

**FACTUAL BACKGROUND**[1]

A.      THE CHARGED OFFENSE

The victim, A. was born in 1991 and was 18 when she testified.  In the late 1990's, she lived in King City with mother, her older brother Albert, and younger brother O.  Defendant was O.'s father.  A.'s mother, L., and defendant dated and he spent time at the house but did not live there.

A. testified that when she was in the third or fourth grade, defendant sometimes forced his finger into her mouth and moved it around.  She said that between the fourth and sixth grades, L. and defendant sometimes had sex on the floor in her bedroom and on some occasions in the twin bed next to her bed.  When they used the bed, defendant sometimes rubbed A.'s legs.  Later, he started to rub her vagina over her clothes and then started to do so under her clothes.  One time, he penetrated her with his finger.

A. testified that once when she was in the fifth grade, defendant tried to make her watch a pornographic videotape in the master bedroom.  However, she ran to the living room and watched TV there.  However, she could still hear his videotape.  That same day, she was in the bathroom, defendant entered, and she kicked him in the groin.  He then grabbed her hand and made him massage his erect penis before she could pull free and run out.

On another occasion, she woke up and saw defendant naked.  He was holding his penis and apparently masturbating.

A. testified that in the fifth grade, she sat outside L.'s bedroom door crying and wanting to tell her about the molestation.  However, her mother was not concerned about why she was crying, pushed her away with her foot, and told her not to listen at the door.

A. testified that one day, when she was 15 and in high school, and after her mother had stopped seeing defendant, her mother told her that defendant was coming over with a support payment.  When defendant arrived, A. was talking to her boyfriend, Manny, on the phone.  She answered the door, and defendant said he would not give her the payment unless she showed him her legs.  She did and then grabbed the check.  She returned to the phone, and Manny, who had heard the conversation, asked her why defendant had spoken to her that way.  She told Manny "everything," and he said he would report defendant if she did not.

After that, A. told her close friend Danny.  She also wrote a letter to her brother Albert.  In it, she said that defendant had been molesting and raping her since the second grade and that she had lost her virginity.  Albert told a school counselor about the letter and showed it to her.  At trial, A. admitted that she had not been raped and had not lost her virginity.  She said she considered what he did rape and that digital penetration qualified as rape.

A. admitted that she never liked defendant because he tried to act like her father and tell her what to do, and she resisted him.  A. also admitted that she fought with her mother because she was dating a 19-year-old boy who her mother

---

[1]    The following facts are taken from the California Court of Appeal's opinion.

thought was too old for her.  Even defendant told her not to see him.  A. and her mother also argued about her phone bill, the way she dressed, and her truancy. At one point, A. wanted to move to live with her father.  However, A. denied that she falsely accused defendant because of the conflicts with her mother.

In 2006, A. reported the abuse to a teacher at her high school, and he related the report to the high school counselor.

At trial, A. admitted that she had exaggerated the instances of abuse when she reported it to personnel at Natividad Hospital and to the police.  She also admitted that she did not report the masturbation incident until she was interviewed by the district attorney.

B.    UNCHARGED SEXUAL MISCONDUCT

The prosecution introduced evidence that defendant had also molested Jane in 1997.  [FN2]  She testified that when she was 12, defendant and her mother were friends, and she used to come to her mother's store in San Lucas.  Her father suspected that defendant and his wife were having an affair.  During that time, Jane spent time with defendant, who would take her for rides in his pickup truck.  He made her sit next to him and hold his hand.  He would then take her hand and put it on his groin.  He would rub her thigh and move his hand up her leg.  Sometimes, he would open his fly and want her to touch his penis.  She declined, although on one occasion he pulled her hand to his exposed penis.  On other occasions, defendant pulled her head down to his crotch and asked her to orally copulate him.

FN2. We refer to her as Jane because her real name also begins with A.

Jane said that once, they took a back road on their way home in the truck. Defendant stopped in the countryside and asked her to walk up a hill with him. There, he unbuttoned his pants and pulled out his penis.  He wanted her to orally copulate him.  She refused but agreed to masturbate him.  When they returned to the truck and headed home, he stopped near some railroad tracks and tried to have sexual intercourse with her but could not penetrate her.

Jane testified that when she told her mother, her mother accused her of lying and warned her not to tell the police because defendant would get deported. Jane testified she spoke to the police twice about defendant molesting her.  She admitted that the second time, she told the officer about an incident that she had not reported the first time, and at that time, she admitted to the officer that she had purposefully concealed the additional incident because she thought it would make her look bad.

C.    THE DEFENSE

L. testified that she and defendant never had sex in A.'s bedroom.  She said A. never mentioned any abuse, and she never told A. that she did not believe her. On the contrary, one day A. told L. that defendant had not molested her. Finally, L. said she never saw defendant act inappropriately around A.

*People v. Villasenor*, No. H035476, 2012 WL 573006, at *1-*2 (Cal. App. Feb. 21, 2012).

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412. Clearly established federal law is defined as "the governing legal principle or principles set forth by the Supreme Court." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Circuit law may be "persuasive authority" for purposes of determining whether a state court

1    decision is an unreasonable application of Supreme Court precedent, however, only the Supreme

2    Court's holdings are binding on the state courts, and only those holdings need be "reasonably"

3    applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

4                                    **DISCUSSION**

5            Petitioner claims that: (1) his right to a speedy trial was violated, and (2) his due process

6    rights were violated when the trial court admitted propensity evidence.

7    A.    Right to Speedy Trial

8            Petitioner asserts that the delay in bringing him to trial on January 25, 2010, after being

9    arrested almost three years prior on March 1, 2007, violated his constitutional right to a speedy

10   trial.  Specifically, petitioner argues that the prosecutor engaged in bad faith when he withheld

11   discovery for the purpose of delaying the jury trial.  Because the facts pertaining to the

12   procedural history are long and tangled, the court will repeat the facts as presented by the

13   California Court of Appeal.

14           In September 2006, school officials learned that A. had accused defendant of
     molesting her from 1996 to 2002.  In October, police learned about the alleged
15   molestation.  In November, police referred the matter to the district attorney,
     who filed a complaint in January 2007 charging defendant with continuous
16   sexual abuse.  Defendant was arrested in March 1, 2007, and released on bail.
     [FN3]  He waived formal arraignment, pleaded not guilty, and waived time.
17   After the preliminary hearing was continued a few times, defendant waived the
     hearing and was held to answer.

18
             FN3.  The record does not clearly establish the date of arrest.  However,
19           in his brief, defendant states that it was March 1, 2007.  His record
             citations do not unequivocally reflect the exact date but do not refute it
20           either.  We accept his date.

21   The information was filed on November 7, 2007, and trial was set for May 12,
     2008.  In April, trial was reset for June 26, 2008.  Thereafter, defendant waived
22   time only to November 10, 2008.

23   On November 6, 2008, the prosecutor sought a continuance to secure the
     testimony of an expert on child sexual abuse accommodation syndrome
24   (CSAAS).  The court found good cause and continued trial to November 17.
     On November 13, defense counsel waived time to February 23, 2009.  On
25   February 19, the prosecutor informed the court that he recently had received
     information about a possible second victim (Jane) and sought a continuance to
26   investigate.  Over defense counsel's objection, the court found good cause but
     did not reset the trial at that time.

27
     On February 23, 2009, the previous trial date, the prosecutor said he had located
28   Jane, and she was willing to cooperate.  Defense counsel objected to a

continuance beyond the 10-day speedy-trial grace period.  He suggested that the prosecutor could dismiss the case and refile it if he needed more time.  However, having previously found good cause, the trial court continued trial to April 20, 2009.

On April 14, 2009, the prosecutor sought another continuance due to the unavailability of the two investigators on the case due to a family medical emergency and prepaid vacation.  The court found good cause to continue trial and reset it for June 8.

On May 22, 2009, defense counsel moved to dismiss the case claiming a violation of speedy-trial rights. [FN4]  He also sought to exclude any and all of the "Jane" evidence because he had not received any discovery.  On May 28, defense counsel renewed his claim of incomplete discovery.  The court ordered the prosecutor to produce all documentary evidence and make Jane available for an interview before trial.  By June 4, 2009, the prosecutor had produced all documentary evidence but not Jane.  The court again directed the prosecutor to produce her and postponed ruling on defendant's motion to exclude the "Jane" evidence.

> FN4.  Defense counsel had previously moved to dismiss on April 8, 2009, but the motion was not ruled upon at that time.

On June 8, 2009, the court granted the motion to exclude because the prosecutor had not produced Jane for an interview.  The prosecutor immediately moved to dismiss the case without prejudice, and the court granted the motion.  The district attorney refiled the complaint on June 10.  Defendant waived time and a preliminary hearing but not his speedy trial objections.  The information was filed on August 17, defendant was arraigned, and trial was set for October 5, 2009.

On September 2, 2009, defendant renewed his motion to dismiss.  After a hearing on October 1, the court denied the motion.  Thereafter, defendant renewed his motion to exclude all "Jane" evidence.  The case remained set for trial on October 5.  On that day, over defendant's objection, the court ruled that the "Jane" evidence was admissible under Evidence Code section 1108. [FN5]

> FN5.  Evidence Code section 1108 authorizes the admission of evidence of uncharged sexual misconduct to show a propensity to commit such acts. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911-912 (*Falsetta*).)

On October 6, 2009, the prosecutor said he needed to issue additional subpoenas because of new information that had come to light concerning Jane.  The court "recessed" the trial until October 19, the last day to comply with defendant's statutory right to a speedy trial.  On October 15, defense counsel complained that because the prosecutor had recently produced numerous new reports related to Jane, he could not properly respond by October 19.  On October 19, defense counsel waived time until November 2 in order to respond to the new discovery. The prosecutor agreed to continue trial to November 2.

On November 2, 2009, the prosecutor informed the court that he had not recovered from medical problems and was not ready to start trial and that Jane had been hospitalized.  Defense counsel objected to a continuance and reasserted defendant's right to a speedy trial.  The court found good cause and continued the trial to November 4.  On that day, the prosecutor said that Jane

1  would not be released from the hospital until she could walk.  Defense counsel
2  objected and reasserted defendant's rights.  The court found good cause and
   continued the case to November 6 for an update on Jane's condition.  On that
3  day, the prosecutor sought additional time because of Jane's condition, but the
   court set trial for November 9.  On November 9, jury voir dire began.

4  On November 12, 2009, the prosecutor had a sudden serious medical
5  emergency, and the court found good cause to continue until November 13.  On
   November 13, the prosecutor was unavailable, and a substitute prosecutor
6  continue [sic] with voir dire.  On November 16, the prosecutor was still
   unavailable.  Defense counsel was ready for trial and objected to a continuance.
7  The court found good cause and continued the case to November 17.  On that
   day, the substitute prosecutor reported that the prosecutor would be unavailable
8  for three weeks.  Defense counsel conceded good cause but did not waive time
   and stipulated to a trial date of January 25, 2010.  The court found good cause,
9  dismissed the jury panel, and continued the trial to January 25, 2010.  The trial
   commenced on that day.

10  *Villasenor*, 2012 WL 573006, at *2-*4.

11      1.  <u>Applicable Law</u>

12      A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment

13  to the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the

14  states.  *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  No per se rule has been devised to

15  determine whether the right to a speedy trial has been violated.  The Supreme Court has stated

16  that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the

17  particular context of the case."  *Barker v. Wingo*, 407 U.S. 514, 522 (1972).  The Supreme Court

18  went on to identify four factors which courts should analyze to determine whether a defendant

19  has been deprived of his speedy trial rights: (1) the length of delay; (2) the reason for the delay;

20  (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  *See Doggett v.*

21  *United States*, 505 U.S. 647, 651 (1992); *Barker*, 407 U.S. at 530.  None of the four factors are

22  either a necessary or sufficient condition for finding a speedy trial deprivation.  *Id.* at 533.  They

23  are related factors and must be considered together with such other circumstances as may be

24  relevant.  *Id.*  However, deliberate delay attributable to the government designed to hamper the

25  defense "weighs heavily against the prosecution," while neutral reasons (such as court

26  congestion) weigh less heavily.  Delay "caused by the defense weighs against the defendant."

27  *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009).

28      The Supreme Court split the first inquiry, the length of delay, into two steps.  First, in

1  order to trigger a full speedy trial analysis, "an accused must allege that the interval between

2  accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial'

3  delay." *Doggett*, 505 U.S. at 651-52.   If this threshold is not met, the court does not proceed

4  with the other *Barker* factors.  *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

5  The Supreme Court has observed that courts generally have found delays approaching one year

6  sufficient to trigger the *Barker* inquiry.  *Doggett*, 505 U.S. at 652 n.1.  The Ninth Circuit has

7  found a six-month delay to constitute a "borderline case" sufficient to trigger an inquiry into the

8  remaining *Barker* factors, *see United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986),

9  although it also has observed that there is a general consensus among the courts of appeals that

10  eight months constitutes the threshold minimum.  *United States v. Gregory*, 322 F.3d 1157, 1162

11  n.3 (9th Cir. 2003).

12       If the delay passes this minimum threshold, then the court must consider "as one factor

13  among several, the extent to which the delay stretches beyond the bare minimum needed to

14  trigger judicial examination of the claim."  *Doggett*, 505 U.S. at 652; *see also Brillon*, 129 S. Ct.

15  at 1287 (overall delay of nearly three years between arrest and trial triggered *Barker* evaluation

16  of reasons for delay); *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) ("If the length

17  of delay is long enough to be considered presumptively prejudicial, an inquiry into the other

18  three factors is triggered.").  In other words, the first *Doggett/Barker* factor directs that if the

19  period between accusation and trial is sufficiently long to be presumptively prejudicial, the court

20  must then inquire further as to all four factors.

21       2.   State Court Opinion

22       The California Court of Appeal recognized that *Doggett* and *Barker* were clearly

23  established Supreme Court precedents, and recited the four factors laid out by the Supreme Court

24  for analyzing a speedy trial rights claim.  As to the first factor – the length of delay – the

25  California Court of Appeal found that the three year delay was presumptively prejudicial.  The

26  California Court of Appeal then went on to consider the extent to which the delay stretched

27  beyond the bare minimum and stated as follows:

28       As an historical fact, the post-accusational delay lasted almost three years.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Villasenor829denhc.wpd          8

However, for purposes of analysis, we do not count the periods of time for which a defendant waived time against the prosecution. (*See People v. McDermott* (2002) 28 Cal. 4th 946, 987; *People v. Seaton* (2001) 26 Cal. 4th 598, 633-634; *People v. Anderson* (2001) 25 Cal. 4th 543, 604, fn.21.) Excluding these periods simply reflects that a defendant must assert his rights when faced with a possible delay that he or she considers unnecessary, unreasonable, or prejudicial.  Moreover, a defendant should not be permitted to voluntarily contribute to a delay by waiving time and then rely on that voluntary contribution to establish that the delay was prejudicial and violated his or her federal constitutional right.

The record before us reveals that defendant generally waived time from March 8, 2007, until June 26, 2008, at which time he started entering limited time waivers to specified dates, the last waiver up to November 10, 2008.  During this time, defendant also consented to a number of continuances, and that other continuances were due to court congestion and the unavailability of counsel due to conflicts with their other cases.

Under the circumstances, we shall not count the period up to November 10, 2008, in determining whether the post-accusational delay extended beyond the minimum necessary to trigger a full analysis.

After November 10, 2008, defendant did not seek or consent to the continuance the court granted to November 17, 2008. However, on November 17, he waived time to February 23, 2009.  [FN8]  Thereafter, defendant did not consent to the two continuances that the court granted the prosecution from February 23 to June 8, 2009.  On June 8, 2009, the case was dismissed.  After it was refiled, defendant regularly asserted his speedy-trial rights and preserved a claim of post-accusation delay until trial on January 25, 2010, except, that is, for a two-week period from October 19 to November 2, 2009, during which he waived time.

> FN8.  Defendant asserts that he did so "reluctantly."  However, the record citation reveals that defense counsel waived time between November 17, 2008, and February 2009 because the prosecutor had a medical emergency.  Moreover, a "reluctant" time waiver is still a waiver.

Given our survey of the time between defendant's arrest and trial, we find that for purposes of analysis, the pertinent period of delay to which defendant did not consent or waive time totaled less than one year – i.e., November 10 to November 17, 2008; February 23 to October 19, 2009; and November 2 to January 25, 2010.  Accordingly, we do not find that the delay before trial extended much, if at all, beyond the minimum necessary to trigger a full examination of defendant's claim.  Thus, this factor does not weigh in favor of finding a federal constitutional speedy-trial violation.

*Villasenor*, 2012 WL 573006, at *5.

    3.   <u>Analysis</u>

       The California Court of Appeal expressly and properly found that the three-year delay was presumptively prejudicial.  The state appellate court then applied California law while

considering "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 651-52. Rather than consider the three-year delay from arrest to trial as a whole, however, the state appellate court expressly excluded from its consideration the delays attributable to petitioner's waiver of time in the pretrial proceedings, and thus reduced the delay from three-years to less than one year. Because of that determination, the state appellate court found that the first *Doggett/Barker* factor did not weigh in favor of finding a constitutional violation.

Here, the state court correctly identified the first *Doggett/Barker* factor, but rather than consider the entire length of the delay, it excluded from consideration those portions of time petitioner waived or to which petitioner consented. Neither *Doggett* or *Barker* approached this factor in this manner, nor did the California Court of Appeal cite to any federal law in its application of this first factor. In discussing this first factor, the Supreme Court has not analyzed it in the way the California Court of Appeal did, i.e., by excluding from consideration petitioner's waived time. Thus, even though the state appellate court correctly identified the clearly established Supreme Court law, the question is whether the state court's application of *Doggett/Barker* was unreasonable. *See Williams*, 529 U.S. at 411 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable).

Assuming that the state court's analysis was an unreasonable application of *Doggett/Barker*, the law is not clear as to whether this court is still required to apply AEDPA deference to the state appellate court's decision here. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Even if the state court used an incorrect legal standard, we need not determine whether AEDPA's deferential standard of review, 28 U.S.C. § 2254(d), applies in this situation.") (citing *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)). However, in this case, it is unnecessary to make that determination. "Courts can, however, deny writs of habeas corpus

1  under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference

2  applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her

3  claim is rejected on de novo review, *see* § 2254(a)." *Id.*  In other words, here, if petitioner

4  cannot demonstrate that his speedy trial rights were violated under a de novo review, which is a

5  more favorable standard of review for petitioner, then petitioner cannot succeed on his writ using

6  the AEDPA deferential review.

7        4.    De Novo Review

8        After determining that the three year delay is presumptively prejudicial, the court must

9  examine "the extent to which the delay stretches beyond the bare minimum needed to trigger

10  judicial examination of the claim. *Doggett*, 505 U.S. at 652.  The presumption of prejudice

11  against the petitioner increases over time. *Id.*  Courts have generally held that the inquiry is

12  triggered when post-indictment (or, as in this case, post-information) delay approaches a year.

13  *See, e.g.*, *Doggett*, 505 U.S. at 652 n.1 (finding presumptive prejudice in case of

14  eight-and-one-half month delay); *McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003) (holding

15  a three-year delay presumptively prejudicial); *United States v. Gregory*, 322 F.3d 1157, 1162

16  (9th Cir. 2003) (explaining that while a twenty-two month delay was presumptively prejudicial,

17  it did not weigh heavily in defendant's favor because it was not excessively long); *United States*

18  *v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001) (describing a six month delay as a "borderline case").

19        The delay at issue here was from March 1, 2007 to January 25, 2010, which is 2 years, 9

20  months, and 25 days.  This duration is sufficient to trigger the rest of the analysis, and weighs in

21  favor of petitioner.

22        Second, the court must consider "whether the government or the criminal defendant is

23  more to blame" for the delay. *Doggett*, 505 U.S. at 651.  Deliberate delay by the government

24  "'to hamper the defense' weighs heavily against the prosecution." *Brillon*, 129 S. Ct. at 1290

25  (quoting *Barker*, 407 U.S. at 531).  A more neutral reason such as negligence should be

26  considered as well, although its weight should be less heavy. *Barker*, 407 U.S. at 531.  "[A]

27  valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*  "In

28  contrast, delay caused by the defense weighs against the defendant under standard waiver

doctrine." *Brillion*, 129 S. Ct. at 1290.  Because defense attorneys act as a defendant's agent, and are not state actors, "delay caused by the defendant's counsel is also charged against the defendant" whether counsel is privately retained or appointed by the state. *Id.* at 1290-91.  The Ninth Circuit considers the reason for delay to be the focal point of the inquiry. *See United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (reasons for delay weigh heavily against finding a Sixth Amendment violation where district judge granted defendant's requests for continuances, defendant was explained his right to a speedy trial before agreeing to continuances, the case was extraordinarily complex, and defendant substituted a new attorney halfway through the proceedings).

Here, the record shows that, on March 1, 2007, petitioner was arrested and released on bail.  From March 1, 2007 until November 10, 2008, petitioner generally waived time by consenting to continuances, whether they were requested by the parties, were due to court congestion, or conflicted with the attorneys' other cases.  Thus, for approximately one year and eight months, the delay cannot be said to be attributable to the prosecution.

A few days prior to November 10, 2008, defense counsel voluntarily provided A.'s school records to the prosecutor.  Defense counsel had been planning to use A.'s school records to demonstrate that A. did not complain to any school authorities during the period of molestation.  On November 6, 2008, based on the receipt of A.'s school records provided by defense counsel, the prosecutor sought a continuance to secure an expert on sexual abuse accommodation syndrome.  Over objection, the trial court found good cause and continued the trial from November 10, 2008 to November 17, 2008.  For these seven days, the delay was attributable to the prosecution.

Thereafter, defense counsel waived time from November 17, 2008 to February 23, 2009.  Thus, an additional three months cannot be attributable to the prosecution.

From February 23, 2009, to April 20, 2009, the prosecutor requested time to investigate a new victim/witness, Jane.  Defense counsel objected to a continuance and suggested that if the prosecutor needed more time, the prosecutor could dismiss the case and re-file it so as to not run afoul of the speedy trial period.  The court granted the continuance.  Due to the unavailability of

1   the two investigators, the prosecutor requested another continuance, which the court granted.

2   Thus, the trial was continued from April 20, 2009 to June 8, 2009.  On May 22, 2009, defense

3   counsel moved to dismiss the case based on a speedy trial violation.  Defense counsel also

4   requested the exclusion of any Jane evidence because defense counsel had not received any

5   discovery.  On June 8, 2009, because the prosecutor had still not produced Jane, the trial court

6   granted defense counsel's motion to exclude Jane evidence, and the prosecutor moved to dismiss

7   the case without prejudice.  On June 10, 2009, the prosecutor refiled the complaint.  Petitioner

8   waived time until July 24, 2009, in order to retain counsel, but petitioner maintained his speedy

9   trial objections.  The trial was set for October 5, 2009.  On October 6, 2009, the prosecutor

10  requested additional time to obtain additional subpoenas because new information had "come to

11  light" regarding Jane.  The court "recessed" the trial until October 19, 2009.  On October 15,

12  2009, defense counsel complained that defense counsel could not properly respond to the new

13  discovery by October 19, 2009, so defense counsel waived time until November 2, 2009, to

14  respond to the new discovery.  From November 2, 2009, through January 25, 2010, either Jane or

15  the prosecutor incurred medical problems necessitating a continuance of trial.  Trial began on

16  January 25, 2010.

17          Thus, the total delay attributable to the prosecution was approximately 11 months: from

18  November 10, 2008 through November 17, 2008, and then from February 23, 2009 through

19  January 25, 2010.[2]  The record demonstrates that the prosecution's requests for continuances

20  were based on the unavailability of witnesses, medical emergencies of the prosecutor as well as

21  Jane, and the investigation of Jane.  Aside from the petitioner's unsupported statements to the

22  contrary, there is no evidence suggesting that the prosecutor's actions were a deliberate attempt

23  to delay the trial.  *See Barker*, 407 U.S. at 531.  At most, the prosecutor's actions regarding the

24  production of the evidence about Jane and the production of Jane herself were negligent.  The

25

26          [2]  The court notes that on October 15, 2009, defense counsel requested a continuance
    from October 19, 2009 to November 2, 2009 in order to prepare a response to the prosecution's

27  new discovery about Jane.  The court attributes the delay from October 19, 2009 to November 2,
    2009 to the prosecution, but acknowledges that an argument could be made that such delay

28  should not be attributable to the prosecution.

California Court of Appeal recognized that the delay in producing the Jane evidence was "inexplicabl[e]," and that neither the record nor the prosecutor provided any reasonable explanation for the delay in production. Nonetheless, the state appellate court ultimately concluded, and the record supports, that the delayed production of discovery was not the reason trial had to be continued from April to June 2009; rather, the delay from April to June 2009 was due to the unavailability of two prosecution witnesses. Thus, a total of approximately 1 year and 11 months of the delay was not attributable to the prosecution. Specifically, from March 1, 2007 through November 10, 2008, and then from November 17, 2008 through February 23, 2009, defense counsel either waived time, or the delay was due to court congestion or conflicts with the attorneys' schedules. Weighing the reasons for the delay, which appear valid, as well as the length of the delay for which the prosecutor was responsible, which is less than half of the overall delay of 2 years, 9 months, and 25 days, does not weigh strongly in favor of finding a speedy trial violation.

Third, a finding that a defendant repeatedly asserted his speedy trial right is entitled to strong evidentiary weight under *Barker*. *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). However, if a defendant asserts his speedy trial rights after requesting continuances, this factor does not weigh in favor of finding a speedy trial violation. *United States v. Corona-Verbera*, 509 F.3d 1105, 1116 (9th Cir. 2007). Here, although petitioner asserted his constitutional right to a speedy trial, he also acquiesced in over half of the delay from March 1, 2007 through November 10, 2008, and then from November 17, 2008 through February 23, 2009. Thus, this factor weighs only somewhat in petitioner's favor. *See United States v. King*, 483 F.3d 483, 976 (9th Cir. 2007) (third *Barker* factor did "not strongly counsel in favor of finding a Sixth Amendment violation" because "[a]lthough [petitioner] at times asserted his right to a speedy trial, at other times he acquiesced in and sought continuances and exclusions of time").

Finally, petitioner was not meaningfully prejudiced by the delay. Actual prejudice from delay can result from oppressive pretrial incarceration, the anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence. *Doggett*, 505 U.S. at 654; *Barker*, 407 U.S. at 532. Of these three

potential forms of prejudice, the last one – impairment of the accused's defense – is the most

important.  *Doggett*, 505 U.S. at 564; *see Barker*, 407 U.S. at 534-35 (holding that a five year

delay between arrest and trial did not deprive defendant of right to speedy trial where defendant

could show no impairment to defense due to delay).  No showing of prejudice is required when

the delay is great and attributable to the government, but when, as here, the government has been

negligent at most, and the delay does not much exceed the minimum time required to trigger the

full *Barker* inquiry, the court must consider the amount of delay in relation to particularized

prejudice.  *United States v. Gregory*, 322 F.3d 1157, 1162-63 (9th Cir. 2003); *see, e.g.*, *United

States v. Drake*, 543 F3d 1080, 1086 (9th Cir. 2008) (finding that although defendant was

incarcerated for two years between indictment and conviction and suffered anxiety and concern,

there was no showing delay impaired the defense: "No witnesses died or disappeared; nothing in

the record demonstrates that evidence shown to be helpful to the defense was lost.")

Here, petitioner argues that he suffered prejudice because the prosecutor negligently and

intentionally delayed the case to gain an advantage at trial.[3]  Specifically, petitioner argues that

defense counsel informed the court that petitioner had run out of money and counsel was being

forced to represent petitioner for free or "cut corners."  As the California Court of Appeal

pointed out, petitioner's concern that counsel was running out of money is a risk that defendants

take when they retain counsel.  *Villasenor*, 2012 WL 573006, at *13-*14.  The state appellate

court recognized that, if a lengthy delay is unjustified, then perhaps the additional financial

burden would become prejudicial for purposes of a speedy trial analysis.  *Id.* at *13.  "However,

delays or continuances for good cause are a routine, reasonably expected occurrence in the

progress of any trial, and the possibility of such a delay must be factored in to the costs that one

---

[3]  The court notes that petitioner raised more claims of prejudice on direct appeal than he did in his federal habeas petition.  For example, on appeal, petitioner argued that because of the delay, "he lost witnesses and important records; the memories of witnesses had faded; he ran out of money to pay retained counsel; and most significantly, the prosecutor was able to introduce the damning Evidence Code section 1108 evidence."  *Villasenor*, 2012 WL 573006, at *10. However, in petitioner's federal petition, he appears to have withdrawn all claims of prejudice except for two: that petitioner had run out of money, and that the defense witnesses were getting weary of the "false starts," and one of them hung up on defense counsel's secretary.  (Doc. No. 2 at 5.)

1    reasonably should anticipate and expect to pay." *Id.* Moreover, the state appellate court

2    observed that because all the continuances here were based on good cause, petitioner would have

3    incurred these "additional" expenses even if Jane was discovered earlier on in the case. *Id.*

4    Finally, the record does not demonstrate, nor does petitioner proffer, any evidence suggesting

5    that petitioner's defense was impaired or diminished due to petitioner's inability to pay. *Id.*

6         Petitioner also asserts that he was prejudiced because the defense witnesses were growing

7    "weary" of the defense team, and specifically, that one critical witness had hung up on defense

8    counsel's secretary. Petitioner explains that when defense counsel's secretary phoned one of the

9    witnesses, A.'s babysitter, "the babysitter complained about the number of delays, wanted to

10   know when the trial was going happen, and hung up." *Villasenor*, 2012 WL 573006, at *11.

11   The California Court of Appeal rejected this claim, concluding that petitioner was relying on

12   nothing but speculation to conclude that any witness' weariness was because of the "post-

13   accusational delay." *Id.* at *11. Although defense counsel expressed confidence that A.'s

14   babysitter would testify, ultimately A.'s babysitter did not. *Id.* However, the record is silent as

15   to why A.'s babysitter was not called to testify. The California Court of Appeal reasoned that it

16   was possible that defense counsel failed to re-subpoena A.'s babysitter, which, if true, would not

17   establish that her absence was due to any post-accusational delay.

18        Petitioner does not give too much insight into the substance about which A.'s babysitter,

19   a potential impeachment witness, would have testified except to say that the testimony would

20   have "undercut [A.'s] claim that she was molested when left home alone, and corroborate[d]

21   [A.'s] mother that she was babysat this entire time." (Doc. No. 2 at 5; Resp. Ex. D at 9, 15.) At

22   trial, A.'s mother testified for the defense and contradicted A.'s testimony that A.'s mother ever

23   had sex with defendant in A.'s room, or in any other room besides the master bedroom. (Resp.

24   Ex. E, RT 1223-24.) A.'s mother also testified that between 1993 and 2003, there was never an

25   occasion when A. would be left at home alone after school because either A.'s mother would

26   pick her up directly from school, directly from the babysitter's house, or A.'s mother would

27   already be home from work. (*Id.*, RT 1225-27.) This testimony contradicted A.'s testimony that

28   sometimes A. was home alone with petitioner after school for an hour or so when she decided

1   she was not going to go to the babysitter's house. (*Id.*, RT 1134-36.)

2         The court finds that the absence of A.'s babysitter as a witness, even assuming that she

3   failed to testify due to post-accusational delay, did not meaningfully prejudice petitioner's

4   defense.  First, according to petitioner, A.'s babysitter's testimony would corroborate A.'s

5   mother's testimony that A. was never left alone at the house after school with petitioner.

6   Because the jury already heard this evidence from A.'s mother, A.'s babysitter's testimony

7   regarding the same would merely have been cumulative.  Second, A. testified that the

8   molestation occurred in A.'s own bed with and without A.'s mother being present in A.'s room

9   on the floor or on the bed with A. and petitioner. (*Id.*, RT 1090-95.)  Thus, even if the jury had

10  believed that A. was never home alone after school with petitioner, A.'s babysitter's testimony

11  would have done nothing to refute A.'s testimony regarding petitioner's actions in A.'s bedroom

12  while A.'s mother was home.

13        Weighing all the factors together, the court finds that although the 2 year, 9 month, and

14  25 day delay was presumptively prejudicial, the prosecution cannot be held accountable for most

15  of the delay.  Moreover, there was no evidence that the 11 month portion of the delay

16  attributable to the prosecution resulted from an intentional dilatory tactic or bad faith attempt to

17  hamper the defense.  Finally, petitioner has not shown actual prejudice from the delay.  For all

18  these reasons, the court finds that the delay in this case did not violate petitioner's constitutional

19  right to a speedy trial.

20  B.    Admission of Propensity Evidence

21        Petitioner argues that the trial court violated his right to due process by admitting the

22  Jane evidence and telling the jury that if it found by a preponderance of the evidence that

23  petitioner committed other acts of sexual offenses, it could infer that petitioner had a propensity

24  toward committing sexual offenses.

25        Even if this evidence were introduced to show that petitioner committed the crime for

26  which he was on trial, the Supreme Court has not held that propensity evidence violates due

27  process.  *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) (reserving the question of whether

28  admission of prior crimes evidence to show propensity would violate the Due Process Clause);

1   *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) ("[The Supreme Court] has

2   not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

3   constitutes a due process violation sufficient to warrant issuance of the writ."). Based on the

4   Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a

5   petitioner's due process right concerning the admission of propensity evidence is not clearly

6   established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006).

7   Thus, petitioner cannot be entitled to habeas relief on this claim. *See, e.g.*, *Larson v. Palmateer*,

8   515 F.3d 1057, 1066 (9th Cir. 2008) (noting that because the Supreme Court expressly reserved

9   the question of whether using evidence of prior crimes to show propensity for criminal activity

10   could ever violate due process, the state court's rejection of the claim did not unreasonably apply

11   clearly established federal law).

12         To the extent that petitioner is arguing that CALCRIM No. 1191[4] violated his right to due

13   process, the court is unpersuaded. The Due Process Clause of the Fourteenth Amendment

14   requires the prosecution to prove every element charged in a criminal offense beyond a

15   reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). The instruction given did nothing to

16   lower this standard of proof, and, in fact, reinforced the reasonable doubt standard: "The People

17   must still prove each element of every charge beyond a reasonable doubt." Because the disputed

---

19      [4] CALCRIM No. 1191 provided: "[¶] The People presented evidence that the
defendant committed a crime of lewd or lascivious act against a child, Penal Code Section

20   288(a), that was not charged in this case. This crime is defined for you in these instructions.
You may consider this evidence only if the People have proved by a preponderance of the

21   evidence that the defendant in fact committed the uncharged offenses. [¶] Proof by a
preponderance of the evidence is a different burden of proof from proof beyond a reasonable

22   doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely
than not that the fact is true. [¶] If the People have not met this burden of proof, you must

23   disregard this evidence entirely. If you decide that the defendant committed the uncharged
offense, you may but are not required to conclude from that evidence that the defendant was

24   disposed or inclined to commit sexual offenses, and based on that decision, also conclude that
the defendant was likely to commit and did commit the crime of Penal Code Section 288.5, the

25   continuous sexual abuse of a child as charged here. [¶] If you conclude that the defendant

26   committed the uncharged offense, that conclusion is only one factor to consider along with all
the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Penal

27   Code Section 288.5. The People must still prove the charge beyond a reasonable doubt. Do not

28   consider this evidence for any other purpose." RT at 1303-04.

1  instruction did not fall afoul of *Winship*, petitioner's claim is DENIED.

2  **CONCLUSION**

3      The petition for writ of habeas corpus is DENIED.  The federal rules governing habeas

4  cases brought by state prisoners require a district court that denies a habeas petition to grant or

5  deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing §

6  2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has not shown "that jurists of reason would find it

7  debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack*

8  *v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

9      The Clerk is instructed to enter judgment in favor of respondent and close the file.

10      IT IS SO ORDERED.

11  DATED: _____8/21/14_____

       *Lucy H. Koh*

12         LUCY H. KOH
       United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28